# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**JULIE TAPIA,**

   **PLAINTIFF,**

**V.**

                                **CIVIL ACTION NO.:**

**WAL-MART STORES EAST,
LP.,**
                           **JURY TRIAL DEMANDED**

   **DEFENDANT.**

## <u>COMPLAINT</u>

## I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e *et seq.* This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq.* (Title VII) and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by Title VII and 42 U.S.C. § 1981 providing for injunctive and other relief against racial and/or national origin harassment, constructive discharge, and retaliation.

2.    Plaintiff timely her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.   PARTIES

3.     Plaintiff, Julie Tapia, hereinafter "Plaintiff," is a citizen of the United States, and a resident of Columbus, Franklin County, Ohio.  Plaintiff was formerly employed by Defendant.

4.     Defendant, Wal-Mart Stores East, LP, (hereinafter "Defendant") is registered and doing business in the State of Alabama and is an entity subject to suit under Title VII.  Defendant employs at least fifteen (15) persons.

## III.   STATEMENT OF THE FACTS

5.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6.     Plaintiff is a person of multiple ethnic backgrounds that are comprised of European descent and Latin-American descent.

7.     Defendant hired Plaintiff on or about November 13, 2015.

8.     Defendant employed Plaintiff at its store located on 2570 Government Boulevard in Mobile, Alabama.

9.     At all times while employed with Defendant, Plaintiff performed her job duties in a competent or better manner.

## IV.   COUNT ONE – Title VII – Hostile Work Environment based on Race and/or National Origin

10.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 9 above.

11.     Plaintiff is a person of multiple ethnic backgrounds that consist of European descent and Latin-American descent.

12.     During her employment, Defendant exposed Plaintiff to a racially hostile environment caused by her co-worker, Kim (LNU).

13.     Plaintiff notified Defendant's management of the racially hostile environment.

14.     After Plaintiff notified Defendant's management of the racially hostile environment, Defendant took no remedial action.

15.     Kim made the following remarks directly to Plaintiff:

- She informed Plaintiff "I don't like white skin, no offense." Plaintiff replied, "I take no offense.  I'm not fully white anyhow" and smiled.  Kim responded by stating "I can't stand white people."

- After learning that Plaintiff was not 100% of European descent, Plaintiff's co-workers asked her, "What all do you have in you?" Plaintiff explained that she is part Latin-American, but that the heritage is from several generations back.

- Plaintiff is capable of speaking Spanish and the co-workers also asked her what she discussed with a manager, Mr. Hur, when they conversed in Spanish.

16.     Shortly after learning Plaintiff's ethnic background, Kim (LNU) made remarks directly to Plaintiff, or in the Plaintiff's presence, wherein she stated:

- "hating wetbacks,"

- how Plaintiff was a "wetback"

- how Plaintiff's kids "were wetbacks."

- Kim (LNU) made remarks such as "I'll whoop that wetback's ass" which threatened violence against Plaintiff.

17.     After Plaintiff completed her job duties of fully fronting her shelves, Kim (LNU) reviewed the labor and informed Plaintiff that she did not properly do her job.

18.     Plaintiff returned to the shelves, and found all of the products that she had properly fronted were now pushed off the shelf and on the floor.

19.     Plaintiff reported Kim (LNU)'s behavior to Defendant's manager, Angela (LNU).

20.     Angela (LNU) informed Plaintiff that she would speak with Melissa (LNU) and see what she would do about the situation.

21.     Plaintiff discussed the situation with two of Defendant's other managers, Michael (LNU) and Shawn (LNU), regarding the hostile environment before Defendant finally investigated.

22.     Plaintiff informed Defendant that she wanted the investigation to be

completed before she returned to work.

23.    Kim (LNU)'s racial & national origin harassment consisted of racially charged remarks and interfered with the performance of Plaintiff's job duties.

24.    Plaintiff complied with Defendant's harassment policy by reporting Kim (LNU)'s racial and national origin harassment to several managers.

25.    Defendant created a hostile work environment based on race and national origin through Kim (LNU) subjecting Plaintiff to harassment on a regular basis.

26.    Throughout the course of her employment with Defendant, Kim (LNU)'s actions subjected Plaintiff to a hostile work environment based on race and national origin.

27.    Plaintiff complied with Defendant's policies regarding reporting the racially based national origin harassment by reporting Kim (LNU)'s conduct to multiple members of Defendant's management team.

28.    Defendant failed to adequately train its management personnel regarding prohibitions against racial and/or national origin harassment of subordinates.

29.    Defendant's actions in failing to protect Plaintiff from a hostile environment based on race and/or national origin created by Kim (LNU) was a violation of Title VII.

30.    As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering mental anguish.

## V.    COUNT TWO – RETALIATION – Title VII – Constructive Discharge

31.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 30 above.

32.    Plaintiff reported Kim (LNU)'s behavior to Defendant's manager, Angela (LNU).

33.    Angela (LNU) informed Plaintiff that she would speak with Melissa (LNU) and see what she would do about the situation.

34.    Plaintiff discussed the situation with two of Defendant's other managers, Michael (LNU) and Shawn (LNU), regarding the hostile environment before Defendant finally investigated.

35.    Plaintiff informed Defendant that she wanted the investigation to be completed before she returned to work.

36.    Defendant then instructed Plaintiff to call Defendant's manager to find out when she could return to work.

37.    Plaintiff contacted Defendant several times and Defendant's managers never returned Plaintiff's phone calls.

38.    In violation of Title VII, Plaintiff has been constructively discharged in retaliation for her complaints of being exposed to a hostile environment based

on her race and national origin.

39.    As a result of Defendant's retaliatory constructive discharge in violation of Title VII, Plaintiff has suffered loss of pay, benefits, and mental anguish.

## VI.    COUNT THREE – 42 U.S.C. § 1981 – Hostile Work Environment based on Race and/or National Origin

40.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 39 above.

41.    Plaintiff is a person of multiple ethnic backgrounds that comprise European descent and Latin-American descent.

42.    During her employment, Defendant exposed Plaintiff to a racially hostile environment caused by her co-worker, Kim (LNU).

43.    Plaintiff notified Defendant's management of the racially hostile environment.

44.    After Plaintiff notified Defendant's management of the racially hostile environment, Defendant took no remedial action.

45.    Kim made the following remarks directly to Plaintiff:

- She informed Plaintiff "I don't like white skin, no offense." Plaintiff replied, "I take no offense.  I'm not fully white anyhow" and smiled.  Kim responded by stating "I can't stand white people."

- After learning that Plaintiff was not 100% of European descent, Plaintiff's co-workers asked her, "What all do you have in you?" Plaintiff explained that she is part Latin-American, but the heritage is from several generations back.

- Plaintiff is capable of speaking Spanish and the co-workers also asked her what she discussed with a manager, Mr. Hur, when they conversed in Spanish.

46.   Shortly after learning Plaintiff's ethnic background, Kim (LNU) made remarks directly to Plaintiff, or in the Plaintiff's presence, wherein she stated:

- "hating wetbacks,"

- how Plaintiff was a "wetback"

- how Plaintiff's kids "were wetbacks."

- Kim (LNU) made remarks such as "I'll whoop that wetback's ass" which threatened violence against Plaintiff.

47.   After Plaintiff completed her job duties of fully fronting her shelves, Kim (LNU) reviewed the labor and informed Plaintiff that she did not properly do her job.

48.   Plaintiff returned to the shelves, and found all of the products that she had properly fronted were now pushed off the shelf and on the floor.

49.   Plaintiff reported Kim (LNU)'s behavior to Defendant's manager,

Angela (LNU).

50.    Angela (LNU) informed Plaintiff that she would speak with Melissa (LNU) and see what she would do about the situation.

51.    Plaintiff discussed the situation with two of Defendant's other managers, Michael (LNU) and Shawn (LNU), regarding the hostile environment before Defendant finally investigated.

52.    Plaintiff informed Defendant that she wanted the investigation to be completed before she returned to work.

53.    Kim (LNU)'s racial & national origin harassment consisted of racially charged remarks and interfered with the performance of Plaintiff's job duties.

54.    Plaintiff complied with Defendant's harassment policy by reporting Kim (LNU)'s racial and national origin harassment to several managers.

55.    Defendant created a hostile work environment based on race and national origin through Kim (LNU) subjecting Plaintiff to basis.

56.    Throughout the course of her employment with Defendant, Kim (LNU)'s actions subjected Plaintiff to a hostile work environment based on race and national origin.

57.    Plaintiff complied with Defendant's policies regarding reporting the harassment based on reporting Kim (LNU)'s racially-based and national origin conduct to multiple members of Defendant's management team.

58.     Defendant failed to adequately train its management personnel regarding prohibitions against racial and/or national origin harassment of subordinates.

59.     Defendant's actions in failing to protect Plaintiff from a hostile environment based on race and/or national origin created by Kim (LNU) was a violation of 42 U.S.C. § 1981.

60.     As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering mental anguish.

## VII.   COUNT FOUR – RETALIATION – 42 U.S.C. § 1981 – Constructive Discharge

61.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 60 above.

62.     Plaintiff reported Kim (LNU)'s behavior to Defendant's manager, Angela (LNU).

63.     Angela (LNU) informed Plaintiff that she would speak with Melissa (LNU) and see what she would do about the situation.

64.     Plaintiff discussed the situation with two of Defendant's other managers, Michael (LNU) and Shawn (LNU), regarding the hostile environment before Defendant finally investigated.

65.     Plaintiff informed Defendant that she wanted the investigation to be completed before she returned to work.

66.     Defendant then instructed Plaintiff to call Defendant's manager to find out when she could return to work.

67.     Plaintiff contacted Defendant several times and Defendant's managers never returned Plaintiff's phone call.

68.     In violation of 42 U.S.C. § 1981, Plaintiff has been constructively discharged in retaliation for her complaints of being exposed to a hostile environment based on her race and national origin.

69.     As a result of Defendant's retaliatory constructive discharge in violation of 42 U.S.C. § 1981, Plaintiff has suffered loss of pay, benefits, and mental anguish.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII and 42 U.S.C. § 1981.

B.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant's request from continuing to violate Title VII and 42 U.S.C. § 1981.

C.     Enter an Order requiring Defendant to make Plaintiff whole by awarding her front-pay, back pay (plus interest) compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

D.     Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**PLEASE SERVE DEFENDANTS AT:**
Wal-Mart Stores East, LP.
CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104